# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 23, 2008          Decided December 30, 2008

No. 07-5330

MOHAMMAD S. BALOCH,
APPELLANT

v.

DIRK KEMPTHORNE, SECRETARY OF THE INTERIOR,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01207)

*Robert C. Seldon* argued the cause for appellant. With him on the briefs was *Molly E. Buie*.

*Rhonda C. Fields*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence* and *Michael J. Ryan*, Assistant U.S. Attorneys.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: In 1991, Mohammad Baloch joined the Department of the Interior as one of two Water Rights Specialists in the Office of Trust Responsibilities at the Bureau of Indian Affairs. In the mid-1990s, the other Water Rights Specialist departed, leaving Baloch as the only employee in that role. For budgetary reasons, the Department did not fill the second position for several years. In 2001, a second Water Rights Specialist was hired, and some of Baloch's duties were shifted to the new Specialist. Baloch was apparently unhappy with the new arrangement, and he clashed with his supervisor. Baloch eventually sued, raising discrimination, retaliation, and hostile work environment claims under Title VII, the Age Discrimination in Employment Act, and the Rehabilitation Act.

On the discrimination and retaliation claims, the District Court awarded summary judgment to the Government because Baloch failed to show that he had suffered an adverse action, an essential element of a discrimination or retaliation claim. We affirm the District Court's judgment on Baloch's discrimination and retaliation claims for two alternative reasons. First, as the District Court concluded, Baloch did not produce sufficient evidence that he suffered an adverse action. Second, he did not produce sufficient evidence that the Government's asserted non-discriminatory reasons for the actions were pretextual and that he suffered discrimination on account of his race, religion, age, or disability, or retaliation on account of his bringing a discrimination complaint.

On the hostile work environment claim, the District Court ruled that Baloch presented insufficient evidence to support such a claim. We affirm the District Court's judgment on that point as well.

I

Since 1991, Mohammad Baloch has worked as a GS-14 Water Rights Specialist in the Natural Resources Division of the Office of Trust Responsibilities at the Bureau of Indian Affairs. When Baloch began work in his division, there were three professionals: a Chief and two Water Rights Specialists. In the mid-1990s, the Branch Chief and the other Water Rights Specialist departed, leaving Baloch as the only professional employee in the division. For about five years, those other positions were not filled, primarily for budget reasons. In 2000, the Director of the Office of Trust Responsibilities, Terrance Virden, appointed Jeffrey Loman as the new Chief of the Natural Resources Division, and Baloch began reporting to Loman. In May 2001, at Virden's direction, Loman hired Daniel Picard as a second GS-14 Water Rights Specialist. The hiring of Picard returned the office to the same strength it had maintained before 1996 – one Chief and two Water Rights Specialists.

In June 2001, shortly after Picard's hiring, Baloch filed an informal administrative complaint alleging discrimination because of race, religion, age, and disability. In August 2001, Baloch filed a formal complaint with the Department of the Interior.

In the ensuing months and years, Baloch and his supervisor Loman clashed. Loman issued "letters of counseling" to Baloch in January 2002 and March 2003 and a

"letter of reprimand" in April 2003. He imposed sick leave restrictions on Baloch in February 2003 and renewed them in August 2003. He proposed that Baloch be suspended for two days in September 2003 and for 30 days in January 2004, and he assisted a grievance official by drafting a decision on the latter proposal. He gave Baloch a performance review of "not achieved" in October 2003. The two engaged in verbal altercations in February, March, August, and October 2003. On one occasion, Loman allegedly threatened to have Baloch arrested, led out of the building in handcuffs, and jailed.

In June 2003, Baloch sued in U.S. District Court for discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* (Baloch's administrative complaint was subsequently dismissed because the Department of the Interior determined that the District Court would address the same issues.)

As to the discrimination and retaliation claims, the District Court granted the Government's motion for summary judgment, concluding that Baloch failed to show that he had suffered adverse actions as required to bring a claim under those employment discrimination laws. The District Court also concluded that Baloch had not produced sufficient evidence of an objectively hostile work environment for purposes of that claim. Baloch appeals, and our review is de novo.

II

We first address Baloch's discrimination claim. Under Title VII, the ADEA, and the Rehabilitation Act, the two

essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability. *See* 42 U.S.C. § 2000e-16(a); 29 U.S.C. §§ 621 *et seq.*; 29 U.S.C. §§ 701 *et seq.*; *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008); *see also Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999) (race discrimination under Title VII); *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006) (age discrimination under the ADEA); *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002) (disability discrimination under the Rehabilitation Act). A plaintiff must prove both elements to sustain a discrimination claim.

A

In most employment discrimination cases that reach federal court, there is no dispute that the employee has suffered an adverse employment action, and the sole question is whether the action occurred because of discrimination. *See Adeyemi*, 525 F.3d at 1227; *Brady*, 520 F.3d at 493, 494 n.2. In this case, however, the employer also contests whether Baloch suffered an adverse action.

Baloch alleges that the change in his substantive duties after another Water Rights Specialist was hired constituted an adverse employment action. The initial problem for Baloch's legal argument is that he was not fired or denied a job or promotion, and he did not suffer any reductions in salary or benefits, which are the typical adverse actions in employment discrimination cases. *See, e.g.*, *Brown*, 199 F.3d at 455-56.

To be sure, in *Czekalski v. Peters*, this Court said that an adverse employment action need not entail a loss of salary,

grade level, or benefits if the plaintiff has "raised a genuine issue as to whether the reassignment left [the employee] with *'significantly different' – and diminished* – supervisory and programmatic responsibilities." 475 F.3d 360, 364 (D.C. Cir. 2007) (emphasis added).[1] Czekalski, for example, produced evidence that she went from overseeing 260 federal employees, 700 contractors, 50 programs, and a $400 million budget, to overseeing fewer than 10 employees and one program with a minimal budget. She also went from reporting directly to the FAA's Associate Administrator for Research and Acquisitions to reporting to a former peer. *Id.* at 364-65. This was enough for her to overcome a summary judgment motion and proceed to trial. *Cf. Bibbs v. Bd. of Trustees for Univ. of Ill.*, No. 98-3029, 1999 WL 569028, at *2 (7th Cir. July 30, 1999) (finding significantly diminished responsibilities where plaintiff lost supervisory and coordination responsibilities and was left with phone, filing, and scheduling duties).

Unlike in *Czekalski*, however, Baloch's duties in the wake of Picard's hiring did not constitute qualitatively inferior work requiring any less skill or knowledge. *Cf. Currier v. Postmaster General*, 304 F.3d 87, 88-89 (D.C. Cir. 2002). It is true that some of Baloch's previous responsibilities were no longer his. But that occurred because another Water Rights Specialist had been hired, returning the unit to the same strength it once had. An adverse employment action does not occur merely because an employer adds more people to the team assigned to a particular task, particularly

---

[1] Some courts of appeals have interpreted the adverse action requirement more narrowly than *Czekalski*. *See, e.g.*, *Grayson v. City of Chicago*, 317 F.3d 745, 750 (7th Cir. 2003); *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 886-87 (6th Cir. 1996). Even under the more generous interpretation in *Czekalski*, however, Baloch still has not sufficiently shown an adverse employment action.

when the addition simply brings the team back to its former numbers. Indeed, we have previously underscored our hesitancy to engage in "judicial micromanagement of business practices" by second-guessing employers' decisions about "which of several qualified employees will work on a particular assignment." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997). So too here. Any reassignment of Baloch's duties that occurred upon Picard's hiring did not itself constitute an adverse employment action for purposes of a discrimination claim.

B

Even if we were to assume an adverse action, however, Baloch did not produce sufficient evidence that his employer's asserted legitimate non-discriminatory reason for hiring Picard was not the actual reason and that Baloch suffered discrimination on an impermissible ground. *See Adeyemi*, 525 F.3d at 1226; *Brady*, 520 F.3d at 495.[2]

---

[2] For purposes of this point, we assume arguendo that Baloch has shown an adverse action (a point that, as noted above, is uncontested in most discrimination cases). In cases where the employee has suffered an adverse action and the employer has asserted a legitimate, non-discriminatory reason for that action, we do not consider the *McDonnell Douglas* prima facie factors. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983); *Brady*, 520 F.3d at 494. Rather, we ask only whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee" on an impermissible ground. *Brady*, 520 F.3d at 494; *see also Aikens*, 460 U.S. at 714-16; *Adeyemi*, 525 F.3d at 1226.

In his deposition, Virden testified that there had been two Water Rights Specialists before budget cuts in 1996 and that Picard's employment simply returned the office to its previous arrangement. Virden also explained that he hired Picard because of BIA's need to strengthen the budget justification process and to install someone with a legal background. Picard, who had a law degree, filled the gaps that had been identified.

Because the employer asserted a legitimate, non-discriminatory reason for the action, we consider only whether Baloch "produced evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against [Baloch] based on" his race, religion, age, or disability. *Brady*, 520 F.3d at 495. Baloch has produced no direct evidence of discriminatory animus by the decisionmaker and failed to produce any other evidence that discredits the underlying reason for Picard's hiring and the subsequent shift in responsibilities. Therefore, even assuming Baloch had suffered an adverse employment action, he did not produce evidence sufficient to overcome summary judgment on the question whether he suffered impermissible discrimination.[3]

### III

We next consider Baloch's retaliation claim. Baloch contends that the Government illegally retaliated against him for filing an administrative complaint. He argues that the

---

[3] With respect to the Rehabilitation Act claim, it is not clear that Baloch showed evidence that he was disabled within the meaning of the statute. *See* 29 U.S.C. § 705(20)(B). Because we reject Baloch's claims for other reasons, however, we need not further address that issue.

District Court erred in holding "that none of the alleged [retaliatory] measures were adverse actions." *Baloch v. Norton*, 517 F. Supp. 2d 345, 354 n.7 (D.D.C. 2007).

To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. §§ 621 *et seq.*; 29 U.S.C. §§ 701 *et seq.*; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted) (defining "materially adverse" as an action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination") (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).[4]

A

According to Baloch, Loman retaliated against him in a variety of ways. Loman imposed sick leave restrictions – requiring that a physician certify the problem and date of treatment each time Baloch submitted a leave request. Baloch asserts that the procedures made it impossible for him to take sick leave because his physicians were too busy to write the

---

[4] "Adverse actions" in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim. Due to differences in the language and purposes behind Title VII's retaliation and discrimination provisions, the Supreme Court clarified in *Burlington N.*, 548 U.S. 53, that the requirements are distinct: Retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment" and may extend to harms that are not workplace-related or employment-related so long as "a reasonable employee would have found the challenged action materially adverse." *Id.* at 64, 68; *see also* 1 BARBARA T. LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 1026-27 (4th ed. 2007).

requisite certifications, and that they amounted to "materially adverse" actions.  But his claim is not substantiated by evidence of any instances when the procedures led him to forgo leave.  And his leave requests, in fact, were granted every time.  Baloch thus has not shown that the restrictions constituted materially adverse actions.

Baloch further argues that Loman's *proposed* 2-day and 30-day suspensions were materially adverse actions that tarnished his reputation and caused emotional distress.  But courts have been unwilling to find adverse actions where the suspension is not actually served.  *Cf. Whittaker v. N. Ill. University*, 424 F.3d 640, 647 (7th Cir. 2005) ("[A] suspension without pay that is never served does not constitute an adverse employment action."); *see also Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 588 n.15 (11th Cir. 2000) ("A threatened letter never actually written cannot constitute an adverse employment action.").  Similarly, Loman's drafting of a proposed decision on a possible 30-day suspension was not materially adverse:  The decision was reassigned to another official, and Loman's ex parte communications had no actual effects.

Baloch also alleges that Loman issued a letter of counseling, letter of reprimand, and unsatisfactory performance review as retaliation for Baloch's discrimination complaints.  The letters, however, contained no abusive language, but rather job-related constructive criticism, which "can prompt an employee to improve her performance." *Whittaker*, 424 F.3d at 648 (quoting *Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001)).  As for the "not achieved" performance evaluation, performance reviews typically constitute adverse actions only when attached to financial harms.  As the Government points out and Baloch does not deny, Baloch had already achieved the highest step

for his grade as a GS-14, step 10 employee. Baloch did not produce evidence showing that the 2003 negative performance evaluation could affect his position, grade level, salary, or promotion opportunities. *See Weber v. Battista*, 494 F.3d 179, 185-86 (D.C. Cir. 2007) (evaluations were "adverse actions insofar as they resulted in her losing a financial award or an award of leave"); *see also Brown v. Snow*, 440 F.3d 1259, 1265 (11th Cir. 2006) ("A lower score on [the employee's] performance evaluation, by itself, is not actionable . . . unless [the employee] can establish that the lower score led to a more tangible form of adverse action, such as ineligibility for promotional opportunities."); *Whittaker*, 424 F.3d at 648 (evaluations and written warnings were not adverse actions because none had "tangible job consequences") (quoting *Longstreet v. Ill. Dep't of Corrections*, 276 F.3d 379, 384 (7th Cir. 2002)).

Finally, Baloch points to Loman's alleged profanity-laden yelling as actionable adverse actions. As alleged, Loman's outbursts, though usually preceded by some infraction on Baloch's part, certainly seem disproportionate. The Supreme Court, however, has emphasized that sporadic verbal altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims: "We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace.'" *Burlington*, 548 U.S. at 68 (emphasis in original) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). The altercations in February, March, August, and October 2003 between Baloch and Loman did not meet the requisite level of regularity or

severity to constitute material adversity for purposes of a retaliation claim.[5]

B

Even if the alleged retaliatory measures were materially adverse actions, the Government asserted legitimate, non-discriminatory reasons for each act, and Baloch did not produce sufficient evidence that would discredit those reasons and show that the actions were retaliatory. *See Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *Vickers v. Powell*, 493 F.3d 186, 195 (D.C. Cir. 2007); *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006).

The Government asserted that the disciplinary measures and comments occurred only after various infractions by Baloch. The leave restrictions were imposed because Baloch had taken an anomalous total of 276 hours (seven weeks) of

---

[5] In dismissing Baloch's retaliation claim, the District Court also relied on the fact that Baloch continued to file administrative complaints in August, October, and November 2003, even after the alleged actions occurred. The District Court explained that Baloch had not been dissuaded from making charges of discrimination and that the alleged actions therefore could not have been materially adverse. *See Baloch*, 517 F. Supp. 2d at 361 ("The filing of a complaint after an alleged instance of retaliation militates against a conclusion that retaliation occurred, as it demonstrates that the filer was not in fact dissuaded from protecting his rights."). We disagree with the District Court's reasoning on this one point because it appears that the court focused on Baloch's subjective reactions rather than on whether the objective "reasonable worker" would have been dissuaded from making a discrimination complaint. *Burlington*, 548 U.S. at 68.

sick leave, which included 18 days before and after holidays and weekends and numerous eight-hour appointments. The suspension proposals were based on Baloch's failure to comply with leave restrictions. The letter of counseling, reprimand, and "not achieved" evaluation were justified by Baloch's disregard of Loman's orders for a draft, unauthorized travel arrangements, late submission of a report, failure to secure recipient funding, unauthorized cancellation of a credit card, and emailing of grievances about Loman to a colleague. The verbal altercations, meanwhile, were similarly preceded by Baloch's failure to comply with instructions or respect Loman's authority. "[G]ood institutional administration" justified disciplining Baloch for these breaches of orders and office etiquette. *Mitchell v. Vanderbilt University*, 389 F.3d 177, 182 (6th Cir. 2004).

Baloch fails to offer evidence rebutting the legitimate, non-discriminatory reasons asserted for the various actions Baloch complains about. Indeed, Baloch *concedes* the infractions that formed the basis for his employer's responses. For example, Baloch responds to the alleged sick leave violations by claiming that he submitted a leave slip that was misplaced. He does not, however, deny that Loman never received the slip in question, nor does he deny that he failed to submit the required certifications on other occasions. Similarly, Baloch admits to disregarding Loman's orders for a draft and merely asserts that in his opinion no meaningful changes were necessary. Baloch likewise admits that he took six months to secure funding for a particular client when Loman had instructed him to act promptly and simply points to the routine nature of funding delays. Baloch argues that he had reasons for committing the infractions. But he did not produce evidence sufficient to show that the Government's asserted reasons for the actions (even assuming that each alleged act was materially adverse) were so ill-justified as to

allow a jury to conclude that they were not the actual reasons and that he suffered retaliation for his discrimination complaints.

Baloch separately claims that Picard did not suffer the same disciplinary actions or verbal abuse that he did. But given the sheer number and willfulness of Baloch's recurrent breaches, Picard was not similarly situated and his allegedly disparate treatment does not give way to an inference of retaliation against Baloch (or, alternatively, of discrimination in the imposition of discipline).

IV

We turn finally to Baloch's hostile work environment claim. To prevail on such a claim, a plaintiff must show that his employer subjected him to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)); *see also Barbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999). To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).

In this case, none of the comments or actions directed at Baloch expressly focused on his race, religion, age, or disability – unlike in some hostile work environment cases. Moreover, the disciplinary actions and workplace conflicts were not so "severe" or "pervasive" as to have changed the

conditions of Baloch's employment.  His claims of harm are not supported by evidence of tangible workplace consequences, whether financial, physical, or professional. His allegations of insult are undercut by the legitimate reasons and constructive criticism offered in the letters of counseling and reprimand.  His claims of public humiliation do not match the evidence.  And his assertion of pervasive and constant abuse is undermined by the sporadic nature of the conflicts. Baloch clearly had several verbal clashes with his supervisor in the workplace.  But the totality of circumstances presented in this record does not rise to the level necessary to support a hostile work environment claim.

***

We affirm the judgment of the District Court.

*So ordered.*