Because exhaustion is jurisdictional, Mr. Brett bears the burden of showing that he raised these allegations at the administrative level. Georgiades , 729 F.2d at 833 n.4. Mr. Brett's opposition does not satisfy this burden. With respect to his claim that Mr. Trent lodged false allegations against him, Mr. Brett's opposition argues that he had a right to raise this claim in administrative proceedings and that he attempted to raise a related claim about being suspended as a result of Mr. Trent's allegations. Opp. to Mot. Dismiss, 29-30. In support of this claim, Mr. Brett cites a letter that he sent to the EEO Contact Center stating that he had made phone calls attempting to complain that he was suspended based on the unsupported allegation that he might be injurious to himself or others. Id. Ex. 30. This does not show that Mr. Brett raised a claim at the administrative level about the complaint Mr. Trent allegedly made about Mr. Brett's workers' compensation claims.[4]
*71 Accordingly, Mr. Brett has failed to demonstrate that he exhausted this claim and has not satisfied his burden of establishing jurisdiction.
Nor has Mr. Brett satisfied his burden of demonstrating that he exhausted his claim that the denial of advance sick leave constituted denial of reasonable accommodation requests. Mr. Brett offers only a citation to his EEO complaint, a citation to an EEO Dispute Resolution Specialist's Inquiry Report, and the conclusory statement, "It cannot be convincingly contested that Mr. Brett lodged complaints under the Rehabilitation Act relating to the denial of leave that put defendant on notice that he was asserting both a disparate treatment and failure to accommodate claim." Id. at 5, 30-31. Mr. Brett's EEO complaint describes itself as a discrimination complaint and makes no reference to reasonable accommodations. Id. at Ex. 7 ("My discrimination complaint is based on the following facts ..."). The Inquiry Report states that Mr. Brett alleged discrimination and not that he alleged failure to accommodate. Mot. Dismiss Ex. A. Since disparate treatment and failure to accommodate are distinct claims under the Rehabilitation Act and Mr. Brett has only demonstrated that he raised disparate treatment claims, his failure to accommodate claims are unexhausted. Accordingly, they must be dismissed.[5]
B. Mr. Brett Has Adequately Pled a Hostile Work Environment
To state a hostile work environment claim, a plaintiff must allege that his employer subjected him to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Baloch v. Kempthorne , 550 F.3d 1191, 1201 (D.C. Cir. 2008). The Postmaster General argues that Mr. Brett has failed to state a hostile work environment claim under the Rehabilitation Act because his Amended Complaint only supports the claim with conclusory assertions, "does not allege that any comments or actions directed at Brett expressly focused on his bicep injury," and is "devoid of any indication that Mr. Brett's 'torn right bicep' was the reason why the [Defendant] decided to act." Memo. ISO Mot. Dismiss, 13.[6]
*72 However, Mr. Brett has alleged that a sustained series of surprisingly negative actions was taken against him despite the fact that similar actions were not taken against employees who were similarly situated except for the fact that they did not have disabilities and did not file EEO complaints. Compl. ¶ 63. He has also alleged that Mr. Trent has a record of retaliation against employees who oppose his employment practices and that Mr. Trent took several of the actions Dismiss, 11. However, it is not necessary for me to decide this question. As Mr. Brett notes, he has not asserted any claims for discrete acts that occurred prior to June 27, 2009. Opp. to Mot. in question at times when he was actively working on his response to Mr. Brett's EEO complaint. See, e.g. , Compl. ¶¶ 58, 75-76, 82. Thus the Amended Complaint is not devoid of indications that the USPS's actions were prompted by Mr. Brett's disability or his participation in protected activity. I find these allegations sufficient at this stage in the proceedings and do not believe dismissal to be appropriate.[7]
C. Mr. Brett Has Adequately Pled Several Discrimination Claims
The essential elements of a discrimination claim under the Rehabilitation Act are: (1) the plaintiff suffered an adverse employment action; and (2) the adverse employment action was taken on account of the plaintiff's protected status. Baloch , 550 F.3d at 1196. In the context of a discrimination claim, an adverse employment action must be a "tangible employment action"-one that constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Lurensky v. Wellinghoff , 167 F.Supp.3d 1, 15 (D.D.C. 2016) (quoting Burlington Indus., Inc. v. Ellerth , 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ). The standard of causation for Rehabilitation Act claims is but-for cause, meaning that the adverse employment action would not have taken place if it were not for the plaintiff's protected status. Gard v. Dep't of Educ. , 752 F.Supp.2d 30, 36 (D.C.C. 2010).
Mr. Brett's exhausted discrimination claims are based on the denial of his requests for advance sick leave in July 2009 and in January 2010, on the unwarranted 14-day suspensions imposed on him in July 2009 and in February 2010, and on the citation he received for being AWOL in 2010. See Compl. ¶ 86. According to the Postmaster General, the denial of Mr. Brett's requests for advance sick leave did not effectuate "a significant change in employment status" because Mr. Brett did not ask for a significant period of leave or suffer financial harm, and the suspensions were not adverse employment actions because Mr. Brett retired without ever serving them. Memo. ISO Mot. Dismiss, 15 (citing Baloch , 550 F.3d at 1199 ; Lurensky , 167 F.Supp.3d at 15 ; Bowe-Connor v. Shinseki , 923 F.Supp.2d 1, 8 (D.D.C. 2013) ).[8] However, Mr. Brett has alleged *73 that his suspensions were used as grounds for approving his termination and that the January 2010 denial of his sick-leave request formed the basis for one of his suspensions.[9] See Compl. ¶¶ 59-60, 80. Construing the allegations in the light most favorable to Mr. Brett, as I must, I find that Mr. Brett has adequately alleged that these actions effectuated a significant change in Mr. Brett's employment status and constitute adverse employment actions.[10]
Mr. Brett has also adequately alleged that the conduct of which he complains was causally connected to his disability. The Postmaster General argues that Mr. Brett's disability has no connection to the denial of his sick-leave requests because the requests were not prompted by his bicep injury and because the injury has no connection to the suspensions or to the AWOL designation, as these were prompted by Mr. Brett hitting his head and having flu symptoms. Memo. ISO Mot. Dismiss, 15. However, the reasons Mr. Brett asked for sick leave do not have any necessary correlation with the reasons sick leave was denied, and the Ms. Brennan has not shown that accidentally hitting one's head or catching the flu are generally sufficient reasons for suspensions and AWOL designations. To the contrary, Mr. Brett has alleged that the treatment he received was inconsistent with the treatment of other employees who were similarly situated but not disabled. Compl. ¶ 63. Although it would be premature to determine that Mr. Brett's disability was a but-for cause of the acts that he complains led to his termination, I am required at this stage in the proceedings to make every reasonable inference in his favor. Covad , 398 F.3d at 671. Thus, I find that Mr. Brett has adequately alleged that he suffered several adverse employment actions because of his disability. More specifically, Mr. Brett has adequately pled his discrimination claims with respect to his two suspensions, his AWOL designation, and the January 2010 denial of his request for sick leave. With respect to these claims, the Postmaster General's motion to dismiss will be denied.[11]
D. Mr. Brett Has Adequately Pled Several Retaliation Claims
The elements of a retaliation claim under the Rehabilitation Act are: (1) the plaintiff engaged in activity protected by the Act; (2) the plaintiff suffered an adverse employment action; and (3) there was a causal connection between the plaintiff's protected activity and the adverse employment action. Bowe-Connor , 923 F.Supp.2d at 7-8 (citing Burlington , 548 U.S. at 67-69, 126 S.Ct. 2405 ). In the context of a retaliation claim, an adverse employment action is one that is sufficiently harmful that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Lurensky , 167 F.Supp.3d at 16 (quoting Burlington N. and Santa Fe Ry. Co. v. White , 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) ). Although this definition is broader than in the context of discrimination *74 claims, it remains necessary to "separate significant from trivial harms" and to identify "material adversity" in order to support a claim. Id. (quoting Burlington , 548 U.S. at 68, 126 S.Ct. 2405 ).
As to the first element, the earliest protected activity that Mr. Brett has alleged is his initiation of EEO counseling on August 11, 2009. See Compl. ¶ 46. Thus, the Postmaster General is correct in arguing that Mr. Brett has failed to state a claim of retaliation on which relief can be granted with respect to any conduct prior to this date. Accordingly, Mr. Brett's retaliation claims related to the July 2009 denial of his sick-leave requests and to the July 2009 suspension will be dismissed.
Mr. Brett's remaining retaliation claims are based on the January 2010 denial of his sick-leave request, the February 2010 suspension, and his designation as AWOL. See Compl. ¶ 90. In light of the fact that adverse employment action is more broadly defined in the retaliation context than in the discrimination context, my earlier determination that these actions constitute adverse employment actions is controlling as to the second element. Turning then to the third element of Mr. Brett's claim, I find that Mr. Brett has adequately pled a causal connection between these actions and his protected activity by alleging that other similarly situated employees who had not initiated EEO complaints were not subjected to similarly adverse actions, that Mr. Trent became aware of his EEO complaint less than three months before engaging in the conduct of which Mr. Brett complains, and that Mr. Trent was actively working on an affidavit in response to his EEO complaint contemporaneously with the conduct of which Mr. Brett complains.[12] Compl. ¶¶ 48, 58, 63. Accordingly, Mr. Brett has adequately pled retaliation claims based on the January 2010 denial of sick leave, the February 2010 suspension, and the AWOL designation. The Postmaster General's motion to dismiss these claims will be denied.
IV. CONCLUSION
For the reasons explained above, the Postmaster General's motion to dismiss will be granted in part with respect to Mr. Brett's unexhausted claims, Mr. Brett's claims arising from the July 2009 denial of his sick-leave requests, and Mr. Brett's retaliation claims arising prior to the filing of his EEO complaint, but will be denied in part with respect to Mr. Brett's remaining claims. The Postmaster General's alternative motion for partial summary judgment on Mr. Brett's unexhausted claims will be dismissed as moot in light of the dismissal of these claims. Mr. Brett's motion for discovery will be dismissed as moot to the extent that it responds to the Postmaster General's alternative motion for partial summary judgment, without prejudice to the filing of discovery motions related to Mr. Brett's remaining claims. A separate order will issue.

In addition to citing this letter, Mr. Brett's statement of facts in dispute also cites Exhibit 15 to show that he raised a claim at the administrative level concerning the allegations Mr. Trent made against him to the Postal Inspection Service. Id. at 4-5. Exhibit 15 contains correspondence sent to Mr. Brett by his employer and suggests that there may have been some connection between Mr. Trent's allegations and Mr. Brett's suspension. Id. Ex. 15. However, even considered in light of Mr. Brett's letter to the EEO Contact Center, this correspondence does not show that Mr. Brett raised a claim about Mr. Trent's allegations to the Postal Inspection Service.

The Postmaster General has moved, in the alternative, for summary judgment on Mr. Brett's unexhausted claims. Mot. Dismiss, 1; Memo. ISO Mot. Dismiss, 11. However, summary judgment is unnecessary in light of the dismissal of these claims. She also argues that I should dismiss as unexhausted "any claim based on a discrete act that occurred prior to June 27, 2010 and any claim based on a discrete act that occurred after February 5, 2010." Memo. ISO Mot. Dismiss, 29 n.4. Moreover, the only claim he has asserted for a discrete act that occurred after February 5, 2010 is the claim based on the allegations that Mr. Trent made to the Postal Inspection Service against Mr. Brett, see Compl. ¶¶ 86, 90, and I have already explained that this claim must be dismissed as unexhausted.

The Postmaster General's reply brief attempts to raise additional arguments about whether there was a causal connection between Mr. Brett's EEO complaint and the conduct of which he complains and about whether the conduct of which Mr. Brett complains was sufficiently severe and pervasive to give rise to a hostile work environment claim, see Reply ISO Mot. Dismiss at 8-9, but I do not consider them. See American Wildlands v. Kempthorne , 530 F.3d 991, 998 (D.C. Cir. 2008) (declining to consider argument raised for the first time in a reply brief on grounds of forfeiture).

The Postmaster General also argues that Mr. Brett's hostile work environment claim may be unexhausted to the extent that it could rely entirely on conduct that took place prior to June 27, 2009. Memo. ISO Mot. Dismiss, 13; Reply ISO Mot. Dismiss, 8. However, I find that Mr. Brett has alleged conduct that took place after June 27, 2009 that could form part of the basis for his hostile work environment claim.

Ms. Brennan does not address whether Mr. Brett's citation for being AWOL constitutes an adverse employment action for purposes of discrimination. See Opp. to Mot. Dismiss, 15-16. Although this might not be an adverse employment action in and of itself without a showing of significant collateral consequences, Mr. Brett has alleged that his designation as AWOL was used to justify agency approval for his termination. Compl. ¶ 80.

Mr. Brett's opposition appears to offer the additional claim that he would have had to serve his suspensions if his employment had not come to an end and that his suspensions would have been unpaid, but this allegation is not contained in his Amended Complaint. Opp. to Mot. Dismiss, 34.

Mr. Brett does not meaningfully dispute that the July 2009 denials of sick leave did not rise to the level of adverse employment actions. See Opp. to Mot. Dismiss, 34.

As stated above, Mr. Brett has not adequately alleged an adverse employment action with respect to the July 2009 denial of his sick-leave requests, and the Postmaster General's motion to dismiss this claim will be granted.

The date on which Mr. Trent became aware of the EEO complaint and the time period during which he was actively preparing his response to it are probative circumstantial evidence, notwithstanding the Postmaster General's argument that I should focus on the connection between Mr. Brett's protected activity and the adverse employment action. See Reply ISO Mot. Dismiss, 13.