**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **RENEE COBB**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-3015 (TSC) |
| | ) | |
| **CARLOS DEL TORO**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Renee Cobb has sued Defendant Carlos Del Toro[1] in his official capacity as

Secretary of the United States Department of the Navy ("Navy"), for unlawful employment

discrimination and hostile work environment on the bases of race, sex, color, and age, in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and for retaliation in violation

of 42 U.S.C. § 1981. She also alleges that Defendant failed to comply with her Freedom of

Information Act ("FOIA") request.

Plaintiff filed this action *pro se* on October 18, 2020 and obtained counsel on June 30,

2021. *See* Notice of Appearance, ECF No. 21. On September 1, 2021, Defendant moved to

dismiss Plaintiff's employment discrimination claims pursuant to Federal Rule of Civil

Procedure 12(b)(6) and for summary judgment on Plaintiff's FOIA claim pursuant to Federal

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Del Toro substituted for his predecessor, Thomas Harker, former Acting Secretary of the Navy. ECF No. 23 at 1 n.1.

Rule of Civil Procedure 56. Def. Mot., ECF Nos. 23, 24.[2] For reasons further explained below, Defendant's motion will be GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Employment Discrimination Claims

As it must at the motion to dismiss stage, the court accepts Plaintiff's allegations as true.

Plaintiff is a Black woman, born in 1965. Am. Compl., ECF No. 5 at 1. She began working for the Navy as a GS-13 general engineer in April 2010. *Id*. at 4. In July 2013, she was promoted to "GS-14 Senior Systems Engineer" and subsequently "assigned Environmental Specialist" in September 2016. *Id.* At all relevant times, she worked at the Navy Yard in the District of Columbia. *Id*.

### i. *Plaintiff's First and Second Claims*

In her first and second claims, Plaintiff alleges that she was unlawfully discriminated against from April 2010 through August 2019. In both claims, she seeks redress for disparate treatment, hostile work environment, and retaliation. *Id*. at 9, 16.

Beginning in April 2010, Plaintiff received "different compensation than a male who started working the same day as she when they were supposed to have received the same pay." *Id.* at 9. In 2014, her supervisor did not select her for a position for which "she was certified as qualified," and in March 2015, she was "abandoned while on TDY in Hawaii." *Id.* at 9–10. Further, Plaintiff's corporate credit card was suspended in 2015, and she was not allowed to travel to Hawaii for work. *Id.* at 10.

---

[2] Defendant appears to have mistakenly filed in duplicate, so the court will refer only to Defendant's first filing: Def. Mot., ECF No. 23.

Plaintiff claims that from 2011 through 2014, she was physically and verbally abused by Matt Schmidt, a White male who was the former head of her branch. *Id.* at 11. Schmidt "poured hot coffee" on Plaintiff in front of two male colleagues and "told her to take her head out of the Virginia class bubble." *Id.* After Plaintiff reported these incidents to Crawford Henderson, a Director, Schmidt proceeded to cancel "almost every meeting" and "threatened . . . [to] make her life at the navy yard miserable in several ways and then, he retired." *Id.*

Beginning in March 2015, Plaintiff was subjected to "constant" investigation and interrogation for "government approved travel for a $200 differential, her extended TDY, inappropriate conduct, and bad judgment;" in November 2015 she was accused—and later exonerated—of sending a classified communication; in January 2016 she was accused of "plugging in a NMCI computer into a NNPI computer port thus, destroying the port;" in 2016 a White male employee conducted a classified investigation of her; and on March 13, 2019, she was investigated "for loss of control of computer that became missing on air flight" that was recovered within twenty-four hours. *Id.* at 11–12.

Plaintiff also claims that between February 12, 2016, and June 17, 2019, she was "set up" for security violations by her co-workers: Robert Basset, Branch Head, claimed that he found "unsecured classified" materials at her cubicle, Amy Bryant left confidential materials at her desk, "the loss of control of the NMCI computer was misnamed a classified computer to add a level of security to the [Navy]'s investigation," and the Navy assigned a White male with a security background as her supervisor. *Id.* at 13. On April 19, 2016, Plaintiff received a letter of reprimand for inappropriate conduct and failure to safeguard classified information. *Id.* at 13–14. At some juncture, her first level supervisor Marc D'Angelis (a White male) told her, "I'm

going to make you pay for being a black female now that I have the authority to do so." *Id*. at 14, 17.

On January 11, 2017, the Navy suspended Plaintiff's security clearance for not timely responding to a security clearance removal notice even though she responded to it four days early. *Id*. at 18. In addition, an employee took Plaintiff's computer from her in a meeting, and she received a "-1" evaluation on her 2016 year-end performance review. *Id*. at 19.

On May 9, 2015 and August 8, 2019 Plaintiff was admitted to a hospital due to work related stress, and in 2019 the Navy ordered her to return to work against her doctor's recommendation. *Id*. at 20. In 2016 and 2019, the Navy placed Plaintiff on administrative leave and subsequently suspended her indefinitely. *Id*. at 21.

ii.     *Plaintiff's Third Claim*

Plaintiff's third claim stems from a March 2019 business trip to Jacksonville, Florida. *Id*. at 24. While leaving the aircraft in Jacksonville, "she noticed that her carry-on bag which contained her government issued laptop and several personal documents were not in the overhead bin." *Id*. She notified the airline and her supervisor that the items were missing. *Id*. Sometime after the aircraft had departed from the Jacksonville airport, the airline located her items on the aircraft. *Id.* at 24–25. But before Plaintiff was able to secure her items, the airline informed her that her bag had been "released to federal agents from her workplace," and her supervisor told her that the incident was under investigation "as a violation of Agency security policy and she was given notice of proposed suspension." *Id.* at 25.

Thereafter, Plaintiff was relieved of various responsibilities, and "a detail assignment" was announced while she was on a scheduled vacation. *Id.* at 26–27.

iii.     *Plaintiff's EEO Complaints*

Plaintiff filed two EEO complaints: the first on June 9, 2016 and the second on July 21, 2019.

In her 2016 EEO complaint and subsequently filed amended EEO complaint, Plaintiff claimed she was subjected to a hostile work environment and discriminated against because of her sex, color, race, age, and protected activity, based on fourteen specified events. *See* Def. Ex. 1, ECF No. 23-1 at 1–3. Ultimately, the EEO office accepted eight claims for investigation:

i. On April 9, 2016, Bassett issued Plaintiff a Letter of Reprimand for Inappropriate Conduct and Failure to Safeguard Classified Information.

ii. From an unspecified time to the present, Plaintiff was not allowed to travel to Hawaii to perform her job.

iii. The Agency investigated the travel claim Plaintiff submitted regarding March 2015 official travel to Hawaii and denied reimbursement for certain expenses related to the claim. This led to Plaintiff filing a claim against the agency before the Civilian Board of Contract Appeals for unreimbursed expenses, and a written decision by the Board in February 2016.

iv. On March 11, 2015, Director Henderson allowed mistreatment and unwarranted hostility toward Plaintiff to continue in relation to her March 2015 travel claim when he denied his involvement in approving extended travel.

v. In May 2015, at the conclusion of the investigation into Plaintiff's government travel, her corporate credit card was suspended, which negatively impacted her work-related travel and performance evaluation.

vi. In March 2016, Plaintiff's new Section and Branch Heads, DeAngelis and Bassett, continued the discriminatory practices and subjected Plaintiff to a hostile work environment that negatively impacted her performance rating.

vii. On January 9, 2017, Plaintiff was placed on administrative leave.

viii. On January 3, 2017, Plaintiff's supervisor issued her FY 2016 performance appraisal noting performance discrepancies.

*Id*. at 2–3; *see* Def. Ex. 2, ECF No. 23-2 at 4–5. On July 9, 2020, an administrative judge dismissed Plaintiff's claims on the merits. *See* ECF No. 23-2 at 16.

In her 2019 EEO complaint, Plaintiff alleged that she was harassed and subjected to a hostile work environment because of her race, sex, age, and in reprisal for prior EEO activity

based on eight events. The EEO office found three claims untimely and accepted five for investigation:

i. On July 11, 2019, Plaintiff was issued a five-day suspension notice and her first line supervisor yelled at her when she asked questions about the suspension.

ii. On July 30, 2019, Plaintiff received an email indicating she was suspended without pay.

iii. On August 20, 2019, Plaintiff was placed on Administrative Leave and required to call in daily.

iv. On September 9, 2019, Plaintiff was suspended without pay.

v. On October 7, 2019, Plaintiff received a Notice of Proposed Indefinite Suspension.

Def. Ex. 4, ECF No. 23-4 at 1–2; ECF No. 23 at 8–9.

## B.     Plaintiff's FOIA Request[3]

On October 26, 2016, Plaintiff submitted a FOIA request to the Navy for "information regarding Defendant's travel investigation and reprimand." ECF No. 5 at 8. On August 31, 2020, the Navy issued a letter noting its final response to Plaintiff's FOIA request. *See* Def. Statement of Material Facts, ECF No. 23-12 at 1 (citing Def. Ex. 6, ECF No. 23-6). The Navy stated that it had conducted an additional review of Plaintiff's request and determined that responsive records were under the control of the Department of Defense ("DoD"). *Id.* The Navy then forwarded Plaintiff's request to the DoD. *Id.* (citing Def. Ex. 10, ECF No. 23-10).

---

[3] Pursuant to Local Civil Rule 7(h), Defendant filed a statement of material facts as to which it asserts there is no genuine dispute. Def. Statement of Material Facts, ECF No. 23-12. Plaintiff's opposition did not include such a statement. Given Plaintiff's failure to comply with the local rules, the court exercises its discretion and "assume[s] that facts identified by the [Defendant] in its statement of material facts are admitted," *id.*, except where Defendant's statement of material facts is controverted by Plaintiff's citation to her own exhibits. *See Hudson v. Am. Fed'n of Gov't Emps.*, 630 F. Supp. 3d 214, 218 (D.D.C. 2022) (finding that the movant's statement of material facts was admitted by the non-movant, except to the extent "evidence provided by the [non-movant] reveals genuine questions as to those facts"); *see Arrington v. United States*, 473 F.3d 329, 335 (D.C. Cir. 2006).

On May 19, 2021, the DoD sent responsive documents to Plaintiff which she retrieved on May 21, 2021. *Id.* at 2 (citing Def. Ex. 7, ECF No. 23-7).

## II. LEGAL STANDARD

### A. 12(b)(6) Motion to Dismiss

Rule 12(b)(6) permits a defendant to "test[] the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), by moving for dismissal on the grounds that the complaint fails "to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint only establishes a facially plausible claim if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Pro se* complaints, "however unartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), but the plaintiff must still "plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

In resolving a motion to dismiss, the court considers only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In an employment discrimination case, the court may take judicial notice of exhaustion-related administrative documents. *See Tyson v. Brennan*, 277 F. Supp. 3d 28, 34 (D.D.C. 2017), *aff'd*, No. 18-5033, 2018 WL 5927921 (D.C. Cir. Nov. 7, 2018);

*see also Vasser v. McDonald*, 228 F. Supp. 3d 1, 9–10 (D.D.C. 2016) ("In the context of exhaustion, courts are willing to rely upon administrative orders and administrative complaints without converting the motion into one for summary judgment when the documents are referred to in the complaint, . . . are integral to [the plaintiff's] exhaustion of administrative remedies, and are public records subject to judicial notice").

**B.  FOIA**

In FOIA litigation, as in all civil cases, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . records." *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citing *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989)).  An agency's decision to "withhold or disclose information under FOIA are reviewed *de novo*." *Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004).

### III.  ANALYSIS

In her Amended Complaint, Plaintiff seeks redress for three "claims for relief" for employment discrimination.  *See* ECF No. 5 at 9–24.  Each claim for relief includes numerous legal claims, *see e.g.*, *id*. at 9 (claim for relief 1 includes legal claims for hostile work environment based on race, color, sex, and age, as well as retaliation and disparate treatment claims), many of which are identical to legal claims in the rest of her Amended Complaint or are based on the same or overlapping incidents.  While Plaintiff's legal claims, and the alleged

incidents that support them, are not clearly delineated, the court liberally construes her Amended Complaint and relies on her opposition to Defendant's motion, filed by her attorney, for additional clarity.

## A. Employment Discrimination Claims

### i. *Timely Exhaustion of Administrative Remedies*

The Equal Employment Opportunity Commission has promulgated detailed regulations establishing administrative procedures for resolving employment discrimination claims against federal agencies. Title VII and the Age Discrimination in Employment Act of 1967 ("ADEA"),[4] require an aggrieved party to exhaust their administrative remedies before filing suit. *See* 42 U.S.C. § 2000e–16(c) (Title VII); 29 U.S.C § 633a(b)–(d) (ADEA). These limits are not jurisdictional and "are subject to equitable tolling, estoppel, and waiver." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Id*. (citations omitted).

An employee who believes they have been discriminated against must consult an EEO counselor within forty-five days of the alleged discriminatory act. *In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006) (citations omitted); 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved informally within thirty days, the employee then has fifteen days to file a formal complaint with the agency. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(a)–(b). Once an employee has filed a formal complaint, the agency must "conduct an impartial and appropriate investigation of the complaint within 180 days" of that filing, *id.* § 1614.106(e)(2), and the

---

[4] The court construes Plaintiff's age discrimination claims as brought under the ADEA.

employee may subsequently sue in federal district court but must do so within ninety days of receiving the agency's final determination—or if the agency does not take final action, within 180 days of filing the complaint with the agency, *see* 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.407(b)–(c).

Defendant argues that because Plaintiff failed to consult an EEO counselor within forty-five days of numerous discriminatory incidents, claims based on those discrete actions are unexhausted and must be dismissed. *See* ECF No. 23 at 15–17. These alleged incidents include:

i.    In April 2010, Plaintiff received different compensation from a male, (citing ECF No. 5 ¶ 1(a)).

ii.   In March 2015, Plaintiff was not selected for a position, (citing *id*. ¶ 1(b)).

iii.  Plaintiff was abandoned while on TDY in Hawaii, (citing *id*. ¶ 1(c)).

iv.   The Navy's investigated Plaintiff, beginning in March 2015, for expenses, time away from the office, inappropriate conduct on her Hawaii trip, sending classified communications, computer use, her travel requests, and loss of a government-issued computer, (citing *id*. ¶ 3(a)–(f)).

v.    Co-workers set Plaintiff up for security violations beginning in 2016, when a co-worker claimed he found unsecured classified material in her cubicle, and ending in 2019, when she lost a government-issued computer that was "misnamed a classified computer," (citing *id*. ¶ 5(a)–(e)).

vi.   Workplace hostility caused Plaintiff severe stress and subsequent hospitalization, (citing *id*. ¶ 10(i)).

vii.  Plaintiff was denied reasonable accommodations, (citing *id*. ¶ 10(j)).

viii. Plaintiff was denied promotional opportunities, (citing *id*. ¶ 10(k)).

ECF No. 23 at 15.

Plaintiff responds that she "timely reported the incidents" by filing an EEO complaint in June 2015. Pl. Opp'n, ECF No. 26 at 10–11. She further contends that she "diligently pursued her rights by participating in a management sponsored mediation" with Schmidt, and there are "a litany of persons that she kept apprised of the discrimination and retaliation that she endured." *Id*. at 11–13.

But Plaintiff does not claim that she consulted an EEO counselor within forty-five days of any of the incidents listed above, and her 2016 and 2019 EEO complaints either do not mention these incidents or they were rejected for investigation as untimely. Further, these claims are not subject to equitable tolling because Plaintiff has not demonstrated that extraordinary circumstances prevented her from timely seeking administrative remedies. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). Because these discrete incidents were not reported within a forty-five-day window, they are unexhausted and cannot support her discrimination claims.

Given that Plaintiff's unexhausted claims will be dismissed, the court construes her Amended Complaint to include eleven remaining allegations of discrimination, retaliation, and hostile work environment:

i. On April 9, 2016, Plaintiff was issued a letter of reprimand, ECF No. 5 at 19.

ii. Between 2011 and 2014, Schmidt insulted and physically abused Plaintiff, including by pouring hot coffee on her, *id*. at 11.

iii. Starting in March 2015, for an unspecified period, Plaintiff was not allowed to participate in official travel to Hawaii, *id*. at 10.

iv. In 2015, Plaintiff's corporate credit card was suspended, *id*. at 10.

v. D'Angelis told Plaintiff, "I'm going to make you pay for being a Black female now that I have the authority to do so," *id* at 14.

vi. On an unspecified date, Plaintiff's access to classified information was revoked, *id*. at 21.

vii. In 2016 and 2019, Plaintiff was placed on administrative leave, *id*. at 19, 21.

viii. Plaintiff received a 2016 year-end performance evaluation of "-1", *id*. at 19.

ix. On April 10, 2019, Plaintiff's first line supervisor relieved her of responsibility for leading the "Drumbeat meeting," *id*. at 26.

x. On July 11, 2019, Plaintiff's first line supervisor proposed to suspend her for five days without pay, *id*. at 21; Def. Ex. 3, ECF No. 23-3 at 1.

xi. On November 4, 2019, Plaintiff was indefinitely suspended without pay, ECF No. 5 at 15.

*Cf*. ECF No. 23 at 18–19 (listing remaining allegations). Of the remaining allegations, Defendant moves to dismiss only claims based on allegations (ii.) and (v.).[5]

ii.  *Retaliation Claims Under § 1981*

Plaintiff brings her retaliation claims pursuant to 42 U.S.C. § 1981, but Defendant is correct that § 1981 does not provide a cause of action against the Navy for alleged employment discrimination. *See Torre v. Barry*, 661 F.2d 1371, 1374 (D.C. Cir. 1981) (holding that an employee covered by Title VII may not sue under 42 U.S.C. § 1981); *Bozgoz v. James*, Civ A. No. 19-0239 (ABJ), 2020 WL 4732085, at \*12–13 (D.D.C. Aug. 14, 2020) ("claims covered by Title VII may not be brought under other federal statutes, including 42 U.S.C. § 1981").

Defendant also moved in the alternative to dismiss Plaintiff's retaliation claims on the grounds that she failed to allege that she was subject to a "materially adverse action." ECF No. 23 at 18 (citing *Burlington N. & Santa Re Ry. Co. v. White,* 548 U.S. 53, 64 (2006)).

iii.  *Adverse Employment Actions*

To sustain a discrimination action under either Title VII or the ADEA, a plaintiff must allege that she suffered an "adverse employment action." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). An adverse employment action is one that results in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

---

[5] *See id*. at 19 ("Defendant will not dispute Plaintiff's allegations of discrimination related to her placement on administrative leave in 2017 and 2019 and indefinite suspension and will file a motion for summary judgment with respect to those claims on a later date."); Notice of Withdrawal of Arg., ECF No. 36 at 3 ("Defendant respectfully withdraws the arguments in its currently pending motion that the issuance of an April 9, 2016 letter of reprimand, disallowance from official travel, suspension of a corporate card, the contents of a 2017 performance evaluation, and a notice of a 5-day suspension are actionable under the now defunct 'materially adverse' standard.").

different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Until recently, finding an adverse employment action required courts in this district to conclude that "a reasonable trier of fact could find objectively tangible harm" based on "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). Then, in *Chambers v. District of Columbia*, the D.C. Circuit held that an employee's forced transfer or denial of a transfer request, because of that employee's protected status, constitutes an adverse employment action, regardless of whether the employee suffers an "objectively tangible harm." 35 F.4th 870, 874–75 (D.C. Cir. 2022) (en banc). "Once it has been established that an employer has discriminated against an employee with respect to that employee's terms, conditions, or privileges of employment because of a protected characteristic, the analysis is complete." *Id.* But the Circuit acknowledged that "not everything that happens at a workplace affects an employee's 'terms, conditions, or privileges of employment,'" *id.* at 874 (citation omitted), and actionable retaliation claims are still limited to "materially adverse actions" that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Ramos v. Garland*, 77 F.4th 932, 938 (D.C. Cir. 2023) (quoting *White*, 548 U.S. at 68).

In light of the D.C. Circuit's decision in *Chambers*, Defendant withdrew its arguments that the April 9, 2016 letter of reprimand, restriction from official travel, credit card suspension, negative 2017 performance evaluation, and proposed notice of five-day suspension are not sufficiently adverse to sustain an employment discrimination claim. *See* ECF No. 36 at 3. Defendant now argues that alleged insults and physical abuse—including that Schmidt poured

hot coffee on Plaintiff in front of their colleagues—do not qualify as adverse "personnel action[s]," nor are they "beyond trivial." *Id.* But Defendant did not raise this argument in its motion to dismiss or for summary judgment and cannot now add new arguments by way of reply brief. Moreover, even if it had timely made these arguments, the court is unconvinced that either argument would be successful. Indeed, if Plaintiff's allegations are true, this abuse could have altered the conditions of her employment or reasonably dissuaded her from engaging in protected EEO activity.

iv.     *Hostile Work Environment*

A plaintiff alleging a hostile work environment claim must plead enough facts to establish that the "workplace is permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* Hostile work environment claims are "usually characterized by a series of events that cumulatively give rise to a claim, although each individual component might not be actionable on its own." *Craig v. District of Columbia*, 881 F. Supp. 2d 26, 32 (D.D.C. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). And "it must be clear that the hostile work environment was the result of discrimination based on a protected status." *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004) (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances,

including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201 (citation omitted).

Plaintiff has pleaded enough facts to meet the hostile work environment standard based on her race and sex. She claims that Schmidt, a White male supervisor, subjected her to physical abuse when he intentionally "poured hot coffee on [her]" in front of other male colleagues. ECF No. 5 at 11. After she reported the incident to a director, Plaintiff alleges that Schmidt told her that he would make her life "miserable in several ways." *Id*. Plaintiff claims that following that incident, D'Angelis, another White male, told her "I'm going to make you pay for being a Black female now that I have the authority to do so." *Id*. at 14.

Taken together and viewed in the light most favorable to Plaintiff, these actions show "discriminatory intimidation, ridicule, and insult" severe enough to establish a hostile work environment based on her race and sex. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (citation omitted). However, Plaintiff has not alleged any facts that would permit a factfinder to determine whether she was subjected to a hostile work environment because of her age; consequently, her age-based hostile work environment claim will be dismissed.

v.  *Security Clearance Revocation Claim*

The Supreme Court's decision in *Dep't of Navy v. Egan*, 484 U.S. 518 (1988), barred lawsuits directly challenging security clearance determinations, as well as employment discrimination and retaliation actions alleging improper denial or revocation of a security clearance. *See Ryan v. Reno*, 168 F.3d 520, 523 (D.C. Cir. 1999); *Bennett v. Chertoff*, 425 F.3d 999, 1001 (D.C. Cir. 2005). But the D.C. Circuit has recognized an exception to that general prohibition to allow "judicial review of a revocation of an employee's security clearance if that employee brings a Title VII claim that is based on an allegedly false and discriminatory report or

referral to the securit[y] clearance authorities." *Horsey v. U.S. Dep't of State*, 170 F. Supp. 3d 256, 269 (D.D.C. 2016) (citing *Rattigan v. Holder* ("*Rattigan II*"), 689 F.3d 764, 767, 771 (D.C. Cir. 2012)). A *Rattigan*-based Title VII claim must allege that "(1) the agency employee had a discriminatory or retaliatory motive to report the plaintiff or to refer false information about him, and (2) the reporting employee knew that the report or referral of information was false." *Id*. (citation omitted). Further, "the motive and knowing falsity must unite in the same person." *Id*. (citation omitted).

Defendant argues that Plaintiff's security clearance revocation claims should be dismissed under *Eagan*, and Plaintiff argues that her allegations are within the *Rattigan* exception.

Plaintiff claims that just prior to revocation of her security clearance D'Angelis told her, "I'm going to make you pay for being a Black female now that I have the authority to do so," and then reported several security violations. ECF No. 5 at 14, 17. These allegations permit an inference that D'Angelis falsely blamed Plaintiff for a security violation because she is a Black woman. Accordingly, the court will not dismiss Plaintiff's race and sex-based security clearance revocation claims at this juncture.

**B.     FOIA Claim**

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). It requires federal agencies to comply with requests for records unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id.* (citationomitted); *see also* 5 U.S.C. § 552(a)–(b). An agency is entitled to summary judgment in a FOIA case if

there are no disputed material facts, it has conducted an adequate search for responsive records, and each responsive record has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

Both parties agree that the Navy has released all documents responsive to Plaintiff's FOIA request, *see* ECF No. 26 at 18. Consequently, the court finds that there is no genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law on Plaintiff's FOIA claim.

## IV.  CONCLUSION

Defendant's motion to dismiss and for summary judgment will be GRANTED in part and DENIED in part. A corresponding Order will accompany this Memorandum Opinion.

Date: September 25, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge